## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **SHANE BRUCE,**<br>　　　**Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **NO.  18-2626** |
| **BP P.L.C., et al.,**<br>　　　**Defendants** | **SECTION: "E" (4)** |

## ORDER AND REASONS

Plaintiff Shane Bruce filed a complaint in the Eastern District of Tennessee (Knoxville) on July 3, 2017.[1] On that same day, Plaintiff filed a Motion for Leave to proceed in forma pauperis.[2] On August 17, 2017, that court granted the motion.[3] Plaintiff filed an amended complaint in the Eastern District of Tennessee (Knoxville) on October 10, 2017.[4]

The Plaintiff's case was transferred to this district by MDL Transfer Order on February 2, 2018.[5] In this court, proceeding pro se and in forma pauperis, the Plaintiff filed a Second Amended Complaint,[6] and a Fourth Amended Complaint,[7] alleging he suffered personal injury, lost wages, and other financial damages, and seeking punitive damages, as a result of the BP Deepwater Horizon oil spill.[8] Defendants BP p.l.c., BP Exploration & Production, Inc., and BP America Production Company filed a Motion to Dismiss the Fourth Amended Complaint.[9] Halliburton Energy Services,  Transocean

---

[1] R. Doc. 1-3.
[2] *Id.*
[3] *Id.*
[4] *Id.*
[5] *Id.*
[6] R. Doc. 12. The Court denied Plaintiff's attempt to file his proposed third amended complaint but allowed him to try again. R. Doc. 37 at 2. When he refiled the pleading, the Plaintiff mistakenly captioned it as his fourth, rather than his third, amended complaint.
[7] R. Doc. 41.
[8] R. Doc. 41.
[9] R. Doc. 51.

Deepwater, Inc., Transocean Holdings, LLC, and Transocean Offshore Deepwater Drilling, Inc. joined in the Motion to Dismiss.[10]

## BACKGROUND

The Defendants accurately state the background of this action.

The *Deepwater Horizon* was a mobile offshore drilling unit owned by Transocean Ltd. that operated in the Gulf of Mexico. BP Exploration & Production Inc.—the relevant BP entity—hired Transocean to drill the Macondo Well. On April 20, 2010, the *Deepwater Horizon* suffered a blowout, causing an oil spill. *See Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 418-20 (5th Cir. 2013); *see also id.* at 422-24 (taking judicial notice of these facts). Within days, the federal government—through the Federal On-Scene Coordinator and Unified Area Command—instituted a massive response. *Id.* at 418. The well was "capped on July 15, 2010" and then "killed on September 19, 2010 ...." *Id.* at 420.

The Judicial Panel on Multidistrict Litigation assigned Judge Carl Barbier of this District to oversee the ensuing *Deepwater Horizon* MDL. *See In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mex., on Apr. 20, 2010*, 731 F. Supp. 2d 1352 (J.P.M.L. 2010). Judge Barbier presided over a seven-week trial in 2013 to determine the oil spill's cause. *See* MDL 2179, Rec. Doc. 13381-1 (Sept. 9, 2014). In advance of that trial, the causes of and allocation of fault for the blowout were the subject of a massive amount of discovery. During the trial, moreover, every aspect of the *Deepwater Horizon*'s operations regarding the Macondo well was scrutinized in minute detail by the United States, every State in the Gulf Coast region, and individual plaintiffs represented by experienced lawyers. None of these parties—supported by teams of scientists—alleged that genetically modified microbes caused the *Deepwater Horizon* explosion. Instead, they focused on much more conventional potential causes, including "the fact that the well encountered increasingly fragile sandstone," "the presence of a large amount of debris in the well," and the nature of the "cementing." *Id.* at 17, 20, 25 (¶¶ 57, 71, 93).

Following trial, Judge Barbier concluded that BP Exploration & Production Inc. and BP America Production Co.—"but not BP p.l.c."—were "67%" responsible for the spill, with various Transocean and Halliburton entities being responsible for the remainder. *Id.* at 152 (¶ 612). As Judge Barbier recognized, BP p.l.c. is a "parent corporation" that played no role regarding the *Deepwater Horizon*. *Id.* at 143 (¶¶ 572-73). Judge Barbier also assessed the United States' allegations under the Clean Water Act and concluded that "BP Exploration & Production Inc."—but, again, not BP p.l.c.—was liable. *Id.* at 152 (¶ 611). Judge Barbier did not find that genetically modified microbes played any role in the explosion or spill.[11]

---

[10] R. Doc. 54.
[11] R. Doc. 51-1 at 8-9.

**The Plaintiff's claims are barred by issue preclusion.**

Despite Judge Barbier's findings about the cause of spill, Bruce sued numerous defendants on July 3, 2017—including BP p.l.c., Sir John Sawers (a member of BP p.l.c.'s Board of Directors), Great Britain, the American Medical Association, the University of Tennessee, and many medical professionals—in the Eastern District of Tennessee.[12] On October 10, 2017, Bruce amended his complaint. As described by Judge Harry Mattice, Bruce claimed that "the Deepwater Horizon incident was a deliberate attack, orchestrated as part of an international conspiracy" that involved "the highest levels of the American and British governments, including Her Majesty Queen Elizabeth II and United States Secretary of Defense, James 'Mad Dog' Mattis."[13] Bruce alleged that the conspirators used "microbes" to create "genetically modified" bacteria that could "'mine' metals" on the seafloor, thus "casting off many tons of dangerous elemental toxins of heavy metals."[14] Bruce contended that as a result, he suffered from, among other ailments, "4 years of heavy metal poisonings." [15]

The Judicial Panel on Multidistrict Litigation transferred Bruce's claims against BP p.l.c. to Judge Barbier as part of the *Deepwater Horizon* MDL. [16] Bruce's claims against the other defendants, however, including Sir John, continued in the Eastern District of Tennessee. Judge Mattice dismissed Bruce's amended complaint with prejudice on September 25, 2018 pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim; Judge Mattice further concluded that leave to amend his complaint would be "futile."[17] The Sixth Circuit affirmed, explaining, *inter alia*, that "Bruce listed numerous

---

[12] *See* Am. Compl., Case No. 3:17-cv-285, Rec. Doc. 46 (E.D. Tenn. Oct. 10, 2017) ("First Am. Compl.") (Ex. A).
[13] Order, Case No. 3:17-cv-285, Rec. Doc. 129 at 1 (E.D. Tenn. Sept. 25, 2018) (Ex. B) ("Dismissal Order").
[14] First Am. Compl. at 2 (¶¶ 2, 4).
[15] *Id.* at 4 (¶ 14).
[16] *See* Order, Case No. 3:17-cv-285, Rec. Doc. 98 (E.D. Tenn. Feb. 2, 2018).
[17] Dismissal Order at 2-3.

federal statutes, restatements of law, and even the Magna Carta, but failed to allege sufficient facts to make out a viable claim for a violation of any law."[18] Afterwards, Bruce petitioned for certiorari, which the Supreme Court denied without calling for a response. [19]

Judge Mattice and the Sixth Circuit have already considered and rejected Bruce's theory that genetically modified microbes caused the *Deepwater Horizon* oil spill and devoured metals on the seafloor, triggering poisonous rain that eventually caused Bruce's alleged heavy-metal poisoning. Bruce even sued a member of BP p.l.c.'s board for supposedly being involved in these alleged actions. The Supreme Court denied certiorari.[20]

After a court has resolved an issue against a plaintiff in a final judgment (Bruce's petroleum-microbes/poisonous-rain theory), issue preclusion bars that plaintiff from relitigating the same issue against different defendants. Courts may apply preclusion at the motion-to-dismiss stage so long, as in this case, the grounds "are apparent on the face of the pleadings."[21] Furthermore, "IFP complaints may be dismissed as frivolous ... when they seek to relitigate claims which allege substantially the same facts arising from a common series of events which have already been unsuccessfully litigated by the IFP plaintiff."[22]

Issue preclusion has three elements: "(1) the issue ... must be identical to the one involved in the prior action; (2) the issue must have been actually litigated in the prior

---

[18] *Bruce v. Great Britain*, No. 18-6149, 2020 WL 2065955, at *2 (6th Cir. Mar. 19, 2020).
[19] *Bruce v. Great Britain*, No. 18-6149, 2020 WL 2065955 (6th Cir. Mar. 19, 2020), *cert. denied*, 141 S. Ct. 333 (2020).
[20] *Id.*
[21] *Dean v. Miss. Bd. of Bar Admissions*, 394 F. App'x 172, 175 (5th Cir. 2010) (citing *Kan. Reinsurance Co. v. Mortg. Corp. of Tex.*, 20 F.3d 1362, 1366 (5th Cir. 1994)).
[22] *Wilson v. Lynaugh*, 878 F.2d 846, 850 (5th Cir. 1989).

action; and (3) the determination of the issue in the prior action must have been a part of the judgment in that earlier action."[23] Each element is met in this case.

First, other courts have already resolved the issue before the Court. When Bruce was before Judge Mattice, the Sixth Circuit, and the Supreme Court, he alleged that he suffered from heavy-metal poisoning from poisoned rain associated with genetically modified microbes.[24] In fact, Bruce's allegations involved Sir John, whom Bruce sued as a member of the "British Petroleum board," and whose actions he specifically tied to BP p.l.c.'s.[25] Bruce reiterated this theory to the Sixth Circuit, arguing that "Sir John Sawers [is] on the BP board of 'Ethics and Environmental Assurance' [and] surely has knowledge of those events and the devastating heavy metal rains caused by the explosion ...."[26] In fact, Bruce outright told the Sixth Circuit that some of the defendants before that court were *joint wrongdoers* with "BP plc" because of their "perpetuation [of] the *same fraud* obstructing knowledge of heavy metal poisonings."[27] He also unsuccessfully invoked the War of 1812 in that court.[28] Accordingly, these other courts evaluated Bruce's theory that he was injured by "genetically modified microbe[s]" that could "'mine' metals" on the seafloor, causing his sickness, and that a member of BP p.l.c.'s board was a joint wrongdoer with BP as part of these terroristic actions.[29] Bruce's issue in this Court thus overlaps with an issue he advanced previously.[30] That Bruce has now elaborated on his

---

[23] *Gage*, 760 F. App'x at 317 (quotation omitted).
[24] *See, e.g.*, First Am. Compl. at 2-4 (¶¶ 2-13).
[25] *See id* at 3-4 (¶¶ 11-12).
[26] Reply Br., *Bruce v. Great Britain*, No. 18-6149, Rec. Doc. 70 at 12 (Mar. 15, 2019) ("Bruce Sixth Circuit Reply Br.") (Ex. G).
[27] Bruce Sixth Circuit Opening Br. at 33 (emphasis added).
[28] *See* Bruce Sixth Circuit Reply Br. at 9-11, 13.
[29] *See e.g.*, First Am. Compl. at 2 (¶¶ 2, 4).
[30] *See also* Am. Opening Br., *Bruce v. Great Britain*, Case No. 18-6149, Rec. Doc. 39 at 9 (Nov. 29, 2018) ("Bruce Sixth Circuit Opening Br.") (Ex. E) ("I thought rainwater safe and didn't believe it could be heavily contaminated Heavy Metal."); Cert. Pet. at 2 ("In 2011 Petitioner Shane Bruce was poisoned by heavy metal rains caused by the series of actions taken by BP plc."); *id.* at 16 ("The suit is based on heavy metals poisoning. ... BP plc lied about why the microbes were present and how they would increase heavy metal contamination by multiple orders of powers in magnitude."); Reply in Support of Petition at 6, *Bruce v.*

theory is irrelevant. The concept of "'issue' must be understood broadly enough 'to prevent repetitious litigation of what is essentially the same dispute.'"[31] Bruce's new allegations thus cannot bar issue preclusion.[32] In any event, an *in forma pauperis* complaint (like Bruce's) must be dismissed so long as there is "*substantial[]*" similarity with an earlier case.[33]

Second, for similar reasons, the issue before this Court has actually been litigated in these other courts. In the Eastern District of Tennessee, Bruce's claims against Sir John and Great Britain sprung from Bruce's petroleum-microbes/poisonous-rain theory. Judge Mattice dismissed his claims with prejudice. On appeal, Bruce presented the issue again, the Sixth Circuit affirmed. Bruce afterwards presented the issue once again to the Supreme Court, which denied certiorari. Where courts have dismissed a claim on the merits, the actual-litigation element is satisfied.[34]

And third, the determination of the overlapping issue was part of the earlier judgment. As the Sixth Circuit explained, "[t]he district court held that Bruce's conclusory allegations, lacking factual enhancement, were insufficient to plead a claim for relief."[35] On appeal, Bruce argued that he adequately alleged that "BP"—which placed "Sir John Sawyers [sic]" on its board—"use[d] petroleum bacteria" for the "degradation of ores inhibiting oil pumping into their elemental elements." Bruce Sixth Circuit Reply Br. at 9,

---

*Great Britain*, 141 S. Ct. 333 (2020) (No. 19-8805) (Ex. F) (urging the Justices to review his video "Exposed: How to make a BioChem WMD from Industrial Tech: Toxic Skies, Arsenic Rain, Virus, Bacteria").

[31] *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 157 (2015) (quoting Restatement (Second) of Judgments § 27 cmt. c, at 252-53); *see also Gage*, 760 F. App'x at 318 (holding that a case about the "sale of the banned parts" also bars a "case deal[ing] with [those parts'] installation and billing").

[32] *See, e.g.*, *Barna Conshipping, S.L. v. 2,000 Metric Tons, More or Less, of Abandoned Steel*, 410 F. App'x 716, 721 (4th Cir. 2011) ("Barna's failure in the Houston proceeding to present some of the evidence it believed supported its claim does not change the nature of the issue resolved[.]"); *Perry v. Sheahan*, 222 F.3d 309, 318 (7th Cir. 2000) (issue preclusion applies to any allegation that was "available at the time the original complaint was filed").

[33] *Wilson*, 878 F.2d at 850 (emphasis added).

[34] *See, e.g.*, *Gage*, 760 F. App'x at 317-18 ("A court's decision to grant a motion to dismiss qualifies as actual litigation because dismissal with prejudice is 'a final judgment on the merits.'") (quoting *Brooks v. Raymond Dugat Co.*, 336 F.3d 360, 362 (5th Cir. 2003)).

[35] *Bruce*, 2020 WL 2065955, at *1.

6

12. Nonetheless, the Sixth Circuit affirmed, explaining that he "failed to allege sufficient facts to make out a viable claim for a violation of any law."[36] Because Bruce's current complaint rehashes the same theory, issue preclusion applies and the Fourth Amended Complaint must be dismissed.

## **Alternatively, the complaint is dismissed for failure to state a cause of action.**

Defendants also based their motion to dismiss on Bruce's failure to state a cause of action.[37] As explained by the Defendants, who have done a better job than this Court is able to do, Plaintiff in his Fourth Amended Complaint[38] contends the Deepwater Horizon oil spill was an act of "International Terrorism" apparently intended to "quell[] any celebration of the 200th anniversary of the War of 1812."[39] Plaintiff further alleges that someone created genetically modified petroleum microbes and injected them—at some unknown time and through some unknown means—into a pressured oil well thousands of feet beneath the Gulf of Mexico.

Plaintiff also alleges that the Defendants' actions caused the explosion of the Deepwater Horizon Oil Rig and that their "misactions during the cleanup using Corexit caused heavy metals to rain down on terrestrial habitat since an epoch event of a super-volcano or giant meteorite collision."[40] Plaintiff alleges that he "in March 2012, unaware of the danger, along with dozens of others, trapped rainwater while camping in the Apalachicola National Forest during a three-day storm for drinking water, boiled or not. Drank it, bathed in it did laundry in the trapping rain as were 90 miles from the nearest water and is extreme campers custom."[41] The Plaintiff alleges he suffered poisoning from the "misuse of technology by BP plc and subsequent failure to warn people of the immense

---

[36] *Bruce*, 2020 WL 2065955, at *2.
[37] R. Docs. 51, 54.
[38] R. Doc. 41.
[39] *Id*. at 4-5.
[40] R. Doc. 41 at 15 para 24.
[41] *Id*. at 17 paragraph 26.

Continent-effecting amount of poisons and bacteria BP plc has caused to rain down the terrifying and life-threatening experience on the people of the United States."[42] Plaintiff alleges he has had heavy metal poisoning and various inflammatory diseases for the last decade. Plaintiff also alleges that he has obesity and he is afraid to lose weight because "being obese dilutes the heavy metals by my volume and mass"[43] He also alleges that his hair contains hazardous levels of heavy metal toxins and that if "ingested in substantial amounts might kill another."[44]

Plaintiff requests relief in the form of

[O]ther, further and general relief to which he may show himself entitled as Plaintiff in this action against the Defendants due to the Defendants egregious improprieties in negligence, failure to warn, malicious hiding of toxins and condition resulting from their oil well blowout and subsequent disaster in illegal use of Corexit and resulting toxins and what could be seen as a series of misuses of deadly technologies, in attempts to obfuscate the amount of oil expelled, and to consider the technolory of dispersing the heavy metal contaminant into the atmosphere, which could be used in malice against the populations of the United States and other Nations, either way a harm to Public Health, damaged civilian population in what has been deemed a crime. The Petitioner asks the Courts to uphold and maintain his rights and Constitutional Privileges in the wake of such devastating act; also to order reparations for his loss in compensation for bodily injury, personal injury, mental and physical suffering, and punitive monetary findings together with any cost of this action by the Defendants.

BP also called the very "existence of GMO Petroleum Microbes that are capable of [transformation]" impossible to which evidence citing the British research project publishing "Genome sequence and functional genomic analysis of the oil-degrading bacterium Oleispira antarctica" labeled the "DWH DeepWater Horizon) Oceanospirillales".

BP Defendants have wrapped themselves in so many levels of covert falsifications that Punitive measures and outside research must be applied, having to cite open water refinement of metal ores (whether they claimed those ores or not, same processes which EPA doesn't allow openly) or failing to report threats from their own illegal actions to Public Health, or disclose the amount and locations of those toxins from heavy metal tailings. BP Defendants crossed the lines of actually creating a substantial Public Health threat with astronomical damages and didn't disclose therefore susceptible to Civil Litigation to have to pay for what is needed, and I as a Citizen can

---

[42] *Id.* at paragraph 27.
[43] *Id.* at 19 paragraph 31.
[44] *Id.*

take up that breach in Government coverage in accessing the unreported contaminations.[45]

In his Fourth Amended Complaint, Bruce cites many federal statutes, apparently to establish subject-matter jurisdiction, but he fails to allege a cause of action under any of these statutes.

Rule 8(a)(2) requires that a plaintiff's claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"[46] The Supreme Court has explained that a claim for relief must contain sufficient factual allegations to cross "the line between possibility and plausibility."[47] That is, although the district court is bound to "accept as true all of the allegations contained in a complaint," this is limited by the rule that "only a complaint that states a plausible claim for relief survives a motion to dismiss."[48] Related to this is the rule that a district court has the inherent power to dismiss an action that is "so patently lacking in merit as to be frivolous."[49] It is important to keep frivolity distinct from mere improbability. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable [.]"[50] However, improbability tips into frivolity where the "allegations ... are sufficiently fantastic to defy reality as we know it: claims about little green men, or the plaintiff's recent trip to Pluto, or experiences in time travel."[51]

The plausibility standard is met only where the facts alleged enable "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[52] The complaint's allegations must establish "more than a sheer possibility that a defendant

---

[45] R. Doc. 41 at 28.
[46] Fed. R. Civ. P. 8.
[47] Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557, 127 S. Ct. 1955, 167 L.Ed. 2d 929 (2007).
[48] Ashcroft v. Iqbal, 556 U.S. 662, 678–79, 129 S. Ct. 1937, 173 L.Ed. 2d 868 (2009).
[49] Jefferson Fourteenth Assocs. v. Wometco de Puerto Rico, Inc., 695 F.2d 524, 526 & n.3 (11th Cir. 1983).
[50] Twombly, 550 U.S. at 556.
[51] Iqbal, 556 U.S. at 696 (Souter, J., dissenting); see also Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001) (frivolous claims include those describing "fantastic or delusional scenarios.")
[52] Iqbal, 556 U.S. at 678.

has acted unlawfully."[53] Mere "labels and conclusions or a formulaic recitation of the elements of a cause of action will not do," and a plaintiff cannot rely on "naked assertions devoid of further factual enhancement."[54]

In this case Plaintiff's fantastical allegations are far beyond mere improbability. While there are no little green men or time machines in Plaintiff's complaint, it is fantastic enough to be "halted at the starting gate by the district court."[55]

## **Alternatively, the complaint is dismissed as frivolous.**

The Court resolves de novo whether a plaintiff proceeding in forma pauperis has stated a claim and has discretion whether to dismiss such a complaint as frivolous.[56] 28 U.S.C. § 1915(e)(2)(B) provides for the sua sponte dismissal of a complaint filed in forma pauperis if the court concludes the action is: (1) frivolous or malicious; (2) fails to state a claim on which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief.[57] A complaint is frivolous when it is based on an indisputably meritless legal theory or when the factual contentions are "clearly 'baseless.'"[58] A complaint is frivolous when it "lacks an arguable basis either in law or in fact." A complaint that is clearly baseless is one encompassing allegations that describe "fanciful, fantastic, and delusional" scenarios, or that "rise to the level of the irrational or wholly incredible."[59]

---

[53] *Id.*

[54] *Id.* (internal quotation marks and alteration omitted); *see also* Franklin v. Curry, 738 F.3d 1246, 1251 (11th Cir. 2013).

[55] Guthrie v. U.S. Government, 618 F. App'x 612, 617 (11th Cir. 2015) (district court did not abuse its discretion in dismissing as frivolous action brought by former prisoner against thirty-five defendants, alleging that government and others, *inter alia*, pressured him to plead guilty to copyright infringement, monitored him through surveillance equipment, put bacteria in his ear causing him to become infected, and killed his pet parrot) (unpublished but recognized as persuasive authority).

[56] *See Perry v. Allemand*, 687 F. App'x 352, 353 (5th Cir. 2017).

[57] 28 U.S.C. § 1915(e)(2)(B).

[58] *Denton v. Hernandez*, 504 U.S. 25, 32 (1992); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

[59] *Id.* at 33.

Courts must liberally construe pleadings filed by pro se litigants.[60] But even under the most liberal construction, Plaintiff's allegations describe irrational or wholly incredible claims against Defendants. Trial courts may dismiss in forma pauperis complaints as frivolous where complaints have no "realistic chance of ultimate success," no arguable merit in terms of arguable substance of claim presented both in law and fact, or where the court is satisfied "beyond doubt" that plaintiff can prove no set of facts in support of claim that would entitle him to relief.[61] The Court is satisfied there is no reasonable probability that the Plaintiff will be able to produce any evidence in support of his outlandish claims. Therefore, Plaintiff's complaint is frivolous within the terms of the statute.

Plaintiff filed a Motion to Withdraw Pauper Status on January 26, 2022.[62] Apparently, the Plaintiff filed his Motion to Withdraw Pauper Status as a result of his difficulties in serving all of the Defendants and his belief these issues could be resolved if he were not proceeding as a pauper. The Court finds that this action was initiated by Plaintiff while he was proceeding in forma pauperis and that 28 U.S.C. § 1915(e)(2)(B) applies.

The Court finds the claims in Plaintiff's allegations rise to the level of being irrational and wholly incredible and his claims should be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

## Amendment of the complaint would be futile.

Ordinarily, a pro se plaintiff should be granted leave to amend his complaint prior to dismissal, but leave is not required when he has already pleaded his "best case."[63] As

---

[60] *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

[61] *Green v McKaskle* (1986, CA5 Tex) 788 F2d 1116 (5th Cir. 1986); *Perry v. Allemand,* 687 Fed. App'x 352 (5th Cir. 2017).

[62] R. Doc. 36.

[63] *Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009).

discussed above, Bruce has been allowed to amend his original complaint three times. Based on the most deferential review of his complaints, it is highly unlikely that, given the opportunity, he could allege cogent and viable legal claims. Thus, the Court concludes that granting leave to amend under these circumstances would be futile and cause needless delay.

## CONCLUSION

**IT IS ORDERED** that the Motion to Dismiss the Fourth Amended Complaint filed by Defendants BP p.l.c., BP Exploration & Production, Inc., BP America Production Company, Halliburton Energy Services, Transocean Deepwater, Inc., Transocean Holdings, LLC, and Transocean Offshore Deepwater Drilling, Inc.[64] is **GRANTED**. Plaintiff's complaint is dismissed with prejudice for failure to state a cause of action and, alternatively, because it is frivolous.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Withdraw Pauper Status is **DENIED** as moot.[65]

**New Orleans, Louisiana, on this 18th day of March, 2024.**

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[64] R. Docs. 51 and 54.
[65] R. Doc. 36.